UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
Caption in compliance with D.N.J. LBR 9004-2(c)

**McCARTER & ENGLISH, LLP**
Charles A. Stanziale, Jr.
Joseph Lubertazzi, Jr.
Lisa S. Bonsall
Jeffrey T. Testa
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
Email: cstanziale@mccarter.com
 jlubertazzi@mccarter.com
 lbonsall@mccarter.com
 jtesta@mccarter.com

*Proposed Counsel for Debtors and
Debtors in Possession*

---

In re:

TCI 2 HOLDINGS, LLC, et al.,[1]

Debtors.

Chapter 11
Case No.: 09-13654

(Jointly Administered)

## GENERAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMER REGARDING THE DEBTOR'S SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS

The Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements," and together with the Schedules and all applicable exhibits and attachments, the "Schedules and Statements"), are filed herewith by the above-captioned debtors

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: TCI 2 Holdings, LLC (0526); Trump Entertainment Resorts, Inc. (8402); Trump Entertainment Resorts Holdings, L.P. (8407); Trump Entertainment Resorts Funding, Inc. (8405); Trump Entertainment Resorts Development Company, LLC (2230); Trump Taj Mahal Associates, LLC, d/b/a Trump Taj Mahal Casino Resort (6368); Trump Plaza Associates, LLC, d/b/a Trump Plaza Hotel and Casino (1643); Trump Marina Associates, LLC, d/b/a Trump Marina Hotel Casino (8426); TER Management Co., LLC (0648); and TER Development Co., LLC (0425).

ME1 8154869v.1
ME1 8213905v.1

and debtors-in-possession (collectively, the "Debtors") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") pursuant to 11 U.S.C. § 521 and Federal Rule of Bankruptcy Procedure 1007. The Debtors reserve their right to amend these Schedules and Statements. These General Notes and Statement of Limitations, Methodology and Disclaimer Regarding the Debtors' Schedules and Statements of Financial Affairs (the "General Notes") are incorporated by reference in, and comprise an integral part of, the Schedules and Statements, and should be referred to and reviewed in connection with any review of the Schedules and Statements.

**Description of the Cases and "As of" Information Date.**

On February 17, 2009 (the "Petition Date"), the Debtors filed with the Bankruptcy Court their voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"). The Debtors are currently operating their business as debtors-in-possession pursuant to the Bankruptcy Code.

1.    Basis of Presentation.

For Securities and Exchange Commission ("SEC") financial reporting purposes, the Debtors' financial information for all subsidiaries and affiliates (the "Company") is consolidated into the financial statements of Trump Entertainment Resorts, Inc. ("TER"), also a Debtor. The Debtors' Schedules and Statements reflect the assets and liabilities of the ten debtor entities on a nonconsolidated basis (except as set forth in General Notes 3 herein). The Debtors maintain their accounting records in keeping with U.S. generally accepted accounting principles ("GAAP").

2.    Summary of Significant Reporting Policies.

The Debtors own or operate three hotel and casino facilities. Each of the operating Debtor entities separately maintains receipt accounts, accounts payable, controlled disbursement

accounts, payroll disbursement accounts, and petty cash disbursement accounts. Moreover, the Debtors engage in intercompany transactions with other Debtors and non-debtor entities. In connection with such transactions, each entity maintains accounting records reflecting the intercompany accounts receivable and payable arising from each particular transaction (except as set forth in General Note 2.i herein). Accordingly, the following conventions were adopted by the Debtors in the preparation of the Schedules and Statements:

a. Debtor. The Debtors' Schedules and Statements[2] were prepared using information regarding the assets and liabilities of the Debtors pursuant to the Debtors' books and records. To the extent that the Schedules and Statements have not included the addresses of certain vendors and/or claimants, such addresses are maintained and available at the Debtors' corporate headquarters, are being investigated, or have been purposefully withheld for privacy purposes as further described herein.

b. Reporting Date. The Schedules and Statements are prepared as of January 31, 2009, except as otherwise indicated. The management of the Debtors has indicated that the amounts as of the above- mentioned date are reasonable estimates for the amounts as of Petition Date. As regards Questions 3b and 3c of the Statements, which require the Debtors to report payments to creditors within 90 days and to insider creditors made within one year before the Petition Date, the Debtors have reflected such payments for the appropriate time periods from the Petition Date. As regards Question 3c of the Statements, which requires the Debtors to report payments to insider creditors made within one year before the petition date, the Debtors have reported the aggregate of all payments for salary, bonus, as well as all other payments to insiders between January 1, 2008 through and including February 16, 2009, which exceed the one year reporting

---

[2] The Statement or Schedules for a particular Debtor begins immediately after these General Notes.

3

ME1 8213905v.1

period. The Debtors believe this overly inclusive reporting period provides a sufficiently accurate response to the question. Ownership of the Debtors is similarly stated as of January 31, 2009. On February 13, 2009, Donald J. Trump provided notice that he was abandoning his partnership interest in Trump Entertainment Resorts Holdings, L.P.; the Debtors are evaluating the effect of such notice.

c.   Book Value. Unless otherwise noted, each asset and liability of the Debtors is shown on the basis of the book value of the asset or liability in the Debtors' accounting books and records, net of any applicable depreciation, amortization, or reserves. Unless otherwise noted, the Net Book Value ("NBV") on the Debtors' books, rather than the current market values of the Debtors' interests in property and of the Debtors' liabilities, is reflected on the Debtors' Schedules and Statements. Fixed assets are also shown at NBV. Those assets subject to leases that are capitalized for GAAP purposes have been reflected in the Schedules and Statements as personal property. The fact that the Debtors list values as indicated above shall not be deemed an admission regarding value for any purpose.

d.   Estimates and Assumptions. The preparation of the Schedules and Statements required the Debtors to make estimates and assumptions that affect the reported amounts of assets and liabilities, the disclosure of contingent assets and liabilities, and the reported amounts of revenues and expenses during the reporting period. The actual amount of debts, and the actual value of assets and liabilities, could differ significantly from those estimates.

e.   Unknown Amounts. Some of the Debtors' scheduled liabilities are unknown and unliquidated at this time and therefore are listed as "Unknown." In addition, some of

the Debtors' scheduled assets are listed as "Unknown" as it would be prohibitively expensive, unduly burdensome, and time-consuming to obtain current market valuations of each of the Debtors' property interests. Accordingly, the Debtors' Schedules and Statements shall not be interpreted as an admission that any of the Debtors for any purposes, including the solvency or insolvency of the Debtors at the Petition Date or at any time prior thereto.

f.  Accounts receivable and payable. The Debtors maintain their own systems of reporting. The Debtors report accounts receivable and accounts payable separately for each entity and also maintain detailed separate books and records. Accounts receivable are shown at their net book values after credits and allowances. The Debtors reserve all of their rights respecting such credits and allowances.

g.  Property and equipment—owned. Unless otherwise noted, owned property and equipment are stated at NBV. Depreciation and amortization are calculated principally on the straight-line method over the estimated useful lives of depreciable or amortizable assets. Machinery and equipment are depreciated using the straight-line method over the useful life of the various assets ranging from 3 to 7 years.

h.  Property and equipment—leased. In the ordinary course of their business, the Debtors may lease furniture, equipment, and real property from certain third-party lessors. Such operating and capital leases are set forth separately as leases in the Schedules and Statements. The property subject to such leases is owned by third parties but held by and within the control of the Debtors. The property subject to leases is not reflected in the Schedules and Statements as either owned property or assets of the Debtors, or property or assets of third parties within the control of the Debtors. Any such

items recorded under capital leases are depreciated over the shorter of either the lease term or the underlying asset's useful life. The listing of any such arrangement as a "lease" in the Schedules and Statements, however, shall not constitute an admission that any such "lease" is a true lease. The Debtors reserve all of their respective rights to dispute or challenge the characterization or structure of any transaction, document, or instrument (including without limitation, any inter-company agreement) related to a creditor's claim.

i. Intercompany Claims. The Debtors routinely engage in intercompany activity by a balance sheet "netting" of the mutual accounts receivable and payable (recorded as net equity). The intercompany accounts receivable balance of the Debtors is a net balance and includes all activity among the Debtors and its affiliates. In certain instances, these settlements did not and do not involve the transfer of cash, but rather were, and are, bookkeeping transactions only and hence are not included in the Debtors' Schedules and Statements (specifically Statement 2, Statement 3C and Statement 13).

j. Financial Statements. For SEC financial reporting purposes, the financial information for all of the Debtors', and their subsidiaries and affiliates (including, but not limited to the Debtors and debtors in possession in these chapter 11 cases) is consolidated into the financial statements of TER, also a Debtor and a debtor-in-possession.

k. Claims. The Debtors have used their reasonable best efforts to set forth all claims, causes of action, or other rights against third parties as assets in their Schedules and Statements. The Debtors reserve all of their respective rights regarding any claims, causes of action, or other rights with respect to such claims, causes of action, or other rights they may have, and neither these General Notes nor the Schedules and Statements

ME1 8213905v.1

shall be deemed a waiver of any such claims, causes of action, or other rights. Without limiting the foregoing, the Debtors specifically reserve any and all of their rights to recovery, setoff, and reimbursement from various parties.

l.  Schedule G. The business of the Debtors is complex. While every effort has been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases, inadvertent errors or omissions may have occurred. The Debtors hereby reserve all of their respective rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G that, even if such contract, lease or agreement had expired or been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments, and agreements which may not be listed therein. Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payment, options to purchase, rights of first refusal, rights to lease additional space, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. Certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The Debtors reserve all of their rights to dispute or challenge the characterization or the structure of any transaction, document or instrument (including without limitation, any inter-company agreement) related to a creditor's claim. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by one of the Debtors' subsidiaries or affiliates. Such contracts, agreements, and leases are so noted and are listed in Schedule G.

ME1 8213905v.1

m. Offsets. In the ordinary course of business, the Debtors apply offsets to certain debts as a result of credits issued against invoices or outstanding receivables balances owed by creditors. Some of these offsets may have occurred during the 90 days preceding the commencement of the case and are not reported in the Debtors Schedules and Statements.

3. Claims. The Debtors' Schedules and Statements list creditors and set forth the Debtors' estimate of the claims of creditors as of January 31, 2009. The actual unpaid claims of creditors may differ from the amounts set forth in the Schedules and Statements.

4. Disputed, Contingent and/or Unliquidated Claims. Schedules D, E and F permit the Debtors to designate a claim as disputed, contingent and/or unliquidated. A failure to designate a claim on any of these Schedules as disputed, contingent, and/or unliquidated does not constitute an admission that such claim is not subject to objection, or a waiver of the Debtors' right to later designate any given claim as disputed, contingent or unliquidated. The Debtors reserve the right to dispute or assert offsets or defenses to any claim reflected on these schedules as to nature, amount, liability, priority or status of any such claim.

5. First-Day Orders. Pursuant to various orders issued by the Bankruptcy Court (the "First Day Orders"), the Debtors were authorized to pay certain outstanding pre-petition claims, including, without limitation, claims relating to employee compensation, benefits, reimbursable business expenses, critical vendors, certain utilities, certain taxing authorities and certain other expenses. However, the claims listed in the Schedules and Statements may not reflect amounts paid pursuant to these various First Day Orders as they were unpaid as of the Petition Date or such other date as indicated herein. Moreover, to the extent such a claim is listed on the

Case 09-13655-JHW    Doc 5    Filed 03/04/09    Entered 03/04/09 20:40:56    Desc Main
                        Document      Page 9 of 10

Schedules and Statements, inadvertently or otherwise, the Debtors do not waive any right to amend the Schedules and Statements or subsequently to object to such claims.

6. Employee Confidential Information. For Schedule E, the Debtors have not provided the home addresses of the officers, directors, and employees referenced therein for privacy purposes, nor have they provided the names of the employees in certain circumstances for the same reason.

7. Secured Creditor Claims. The Debtors' Schedules and Statements, particularly Schedules D and H and SOFA 10, indicate that Beal Bank Nevada and Beal Bank S.S.B. ("Beal Bank") hold claims secured by substantially all assets of the Debtors who were the primary borrowers, as well as substantially all assets of the Debtors who guaranteed such loans. The balance of each loan is stated as of January 31, 2009.

8. Secured Creditor Claims. The Debtors' Schedules and Statements, particularly Schedules D and H and SOFA 10, indicate that U.S. Bank, National Association holds claims secured by the real property, certain intellectual property and incidental personal property of the Debtors who were the primary borrowers, as well as the real property and incidental personal property of certain of the Debtors who guaranteed such loans. U.S. Bank's rights in such collateral are subordinate to those of Beal Bank. The balance of each loan is stated as of January 31, 2009; the secured value of such loans is listed as unknown with the balance listed as unsecured.

9. Payments related to debt counseling or bankruptcy. All payments related to the bankruptcy were made by Trump Entertainment Resorts Holdings, L.P. for the benefit of itself and all other Debtors.

10. General Notes Control. In the event that the Schedules and Statements differ from the foregoing General Notes, the General Notes shall control.

Neither the Debtors, their agents, nor their attorneys guarantee or warrant the accuracy, the completeness, or correctness of the data that is provided herein or in the Schedules and Statements, and the same are not liable for any loss or injury arising out of or caused in whole or in part by the acts, errors or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering the information in them. While every effort has been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys and advisors do not undertake any obligation to update, modify, revise or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised or re-categorized. In no event shall the Debtors or their agents, attorneys and advisors be liable to any third party for any direct, indirect, incidental, consequential or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys and advisors are advised of the possibility of such damages.

I declare under penalty of perjury, that I have reviewed the Schedules and Statement of Financial Affairs and all attachments thereto, and that, subject to the Global Notes thereto, they are true and correct to my information and belief.

Executed this __4th__ day of __March__, 2009, at Atlantic City, New Jersey.

_____
John P. Burke
Chief Financial Officer